[For an action against the petitioner above, in which similar questions were decided, see Jones v. Knowles, Case No. 7,474.]

## Case No. 7,896.

### KNOWLES et al. v. BEATY.

[1 McLean, 41.][1]

Circuit Court. D. Ohio. July Term, 1829.[2]

CORPORATIONS—POWERS — IMPOSING TAXES—SALE FOR TAXES—ULTRA VIRES.

1. A corporation in the exercise of its powers. is limited to those which are especially conferred on it.

[Cited in Mott v. Pennsylvania R. Co., 30 Pa. St. 20; Franklin Co. v. Lewiston Inst. for Savings, 68 Me. 45.]

2. A power to impose a tax for certain objects. and to meet "all other necessary expenses of the company," does not authorize the corporation to levy a tax, to pay a tax to the state.

3. The expenses contemplated in the act. are those incurred by the corporation in the exercise of its granted powers.

[This was an action of ejectment by the lessee of A. Knowles and others against John Beaty.]

OPINION OF THE COURT. This action of ejectment is brought to recover twelve hundred acres of land in the Connecticut Reserve. It is admitted by the parties, that Jonathan Douglass, who is the ancestor of the plaintiff's lessors, in 1792, under the laws of the state of Connecticut, granting lands to certain sufferers, became vested with the legal title in common with many other proprietors. And that the lessors of the plaintiff are his

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Affirmed in 4 Pet. (29 U. S.) 152.]

heirs at law, and hold the land as tenants in common. It is proved that four of the lessors, in 1808, were minors. A tax title under a sale made by the company incorporated for the management of these lands, is set up by the defendants. In 1796, this company was incorporated by the legislature of Connecticut. The corporators are called in the act "the proprietors of the half million of acres of land lying south of Lake Erie." The legislature of Ohio, the 15th April, 1803, granted an act of incorporation to the same proprietors, and gave to them and to their heirs and assigns succession. Nine directors were to be appointed under this act, who were authorized to hold their meetings out of the state—and power was given to them to extinguish the Indian title, to make partition of the lands among the proprietors, in proportion to their losses in the revolutionary war, which these lands were intended to indemnify. And "to defray all necessary expenses of said company, in purchasing and extinguishing the Indian claim of title to the land, surveying, locating and making partition thereof, as aforesaid, and all other necessary expenses of said company, power be, and the same is hereby given to, and vested in the said directors and their successors in office, to levy a tax or taxes (two-thirds of the directors present agreeing thereto) on said land, and have power to enforce the collection thereof." And the act provides "that all sales of rights or parts of rights of any owner or proprietor in said half million of acres of land, made by the collector, shall be good and valid, so as to secure an absolute title in the purchaser; unless the said owner and proprietor shall redeem the same within six calendar months, next after the sale thereof, by paying the taxes for which the said right or rights, or parts thereof had been sold, with twelve per cent. interest thereon and costs of suit." The act also gives power to the directors and their successors to do "whatever to them shall appear necessary and proper to be done for the well ordering and interest of said owners and proprietors, not contrary to the laws of the state." And it directs that "supplies of money which shall remain in the hands of the treasurer, after the Indian title shall be extinguished and said land located and partition thereof made, shall be used by said directors for the laying out and improving the public road in said tracts, as this assembly shall direct." In 1806 the Ohio legislature imposed a land tax, which act remained in force in 1808. This act required entries of lands to be made for taxation, but whether entered or not the tax was a lien on the lands. Minors were permitted to redeem their land, which had been sold for taxes, within one year after they arrived at full age. It is proved that at a meeting of the directors at New Haven, in Connecticut, the 5th May, 1808, of which meeting due notice had been given, it was unanimously voted by six directors who were in attendance, "that a tax

of two cents on the pound, original loss be assessed on the original rights or losses in said half million of acres, to be paid by each proprietor thereof, in proportion to each person's respective share or loss, as set in the grant of said lands made by the state of Connecticut, to be collected and paid by the several collectors to the treasurers of the company on or before the 1st July, 1808, to defray the expenses of a tax laid by the legislature of the state of Ohio, and other necessary expenses for the good of the proprietors of said land." The defendant proved the assessment of a tax upon the rights of the said Jonathan Douglass, that a collector was appointed, a warrant of collection issued, and that on due notice being given, a part of the right of said Douglass amounting to twelve hundred acres, the land in controversy, was sold for the taxes due thereon, to Ellis Perkins, who conveyed the same to the defendant. The court instructed the jury, that the directors had no power to assess said tax. That this power is not enumerated in the act as given to the directors, and that it cannot be exercised under the general provision that the directors shall have power to levy a tax on said lands, to defray "all necessary expenses of said company." These words the court considered as covering the necessary expenses incurred by the directors, in the exercise of the powers specifically conferred on them. That the power to tax could not be extended beyond the objects designated in the acts, and that the payment of a tax to the state is not one of those objects. The court also instructed the jury that the infant lessors were not bound by the assessment made. The jury found a verdict of guilty against the defendant, on which judgment was entered.

[NOTE. This case was affirmed by the supreme court in error, Mr. Justice McLean delivering the opinion. Upon the first question involved,—the authority of the directors to assess the tax,—says the learned justice: "The exercise of the corporate franchise, being restrictive of individual rights, cannot be extended beyond the letter and spirit of the act of incorporation. * * * As the power to tax for the purpose of paying a tax to the state is not found among the enumerated powers of the directors, it must be derived, if it exist, under the words, 'all other necessary expenses of said company;' or under the tenth section, which provides that 'the directors shall have power to do whatever to them shall appear necessary and proper to be done for the well ordering and interest of the proprietors, not contrary to the laws of the state.' * * * Was the tax imposed a 'necessary expense of said company,' within the meaning of the act?" The learned justice here shows that under the state laws ample provision is made for the collection of state taxes, and a lien reserved upon the land for nonpayment. Continuing, he says: "It appears, therefore, that it is not the intention of the legislature to look to the corporation for the payment of the tax assessed under the law, but to the land, as in all other cases;" and further he continues: "The power to impose a tax on real estate, and to sell it where there is failure to pay the tax, is a high prerogative, and should never be exercised where the right is doubtful." In summing up, says the learned justice: "A tax to the state is not a necessary expense of the com-

pany within the meaning of the act," and "the provision that the 'directors shall have power to do whatever shall appear to them to be necessary and proper' was not intended to give unlimited power, but the exercise of a discretion within the scope of the authority conferred." Upon the second proposition,—the question of the minor proprietors,—the learned justice does not deliver any opinion; the affirmation of the lower court upon the first proposition rendering this unnecessary. 4 Pet. (29 U. S.) 152.]